774 P.2d 914

Betty Jane **FLEMMER**,
Plaintiff–Appellant,

v.

**TAMMANY ELEMENTARY SCHOOL DISTRICT NO. 343, Nez Perce County, Idaho, the Board of Trustees of Tammany Elementary School District No. 343, and Lori Root, William Neumayer, and Al Peterson, the members of the Board of Trustees, Defendants–Respondents.**

No. 17274.

Court of Appeals of Idaho.

June 2, 1989.

Neil D. McFeeley (Eberle, Berlin, Kading, Turnbow & Gillespie), Boise, for plaintiff-appellant.

Thomas P. Baskin and James B. Lynch (Imhoff & Lynch) and Cumer L. Green (Green & Nyman, Law Offices, Ctd.), Boise, for defendants-respondents. James B. Lynch, argued.

BURNETT, Judge.

This case arises from a contract dispute between a teacher and a school district.

The issues are (1) whether the district's exercise of discretion under the contract is subject to judicial review; (2) whether the district timely honored the plaintiff's right to serve as a substitute teacher during the 1985–86 school year; and (3) whether the district deprived the plaintiff of her right to fill an allegedly "open" position as a regular teacher during the 1986–87 school year. The trial court entered summary judgment for the district on each of the plaintiff's claims. Today, for reasons explained below, we affirm the judgment in part, vacate it in part, and remand the case.

The background facts may be summarized briefly. In 1984, the plaintiff, Betty Jane Flemmer, was employed by the Tammany Elementary School District as a teacher. Due to a reduction in force, she lost her job. The district placed her in a special employment pool as provided by a collective bargaining agreement. The agreement required the district to hire regular and substitute teachers on a first priority basis from this employment pool. At times pertinent to the instant case, the plaintiff was the only individual in the pool.

During the 1985–86 school year, one of the district's regular and tenured teachers, Georgia Wallace, became seriously ill. Ms. Wallace was absent from work approximately 84 days, comprising most of the second semester. Although the plaintiff had a first priority right to substitute for Ms. Wallace, the district did not hire her for that position until several weeks had elapsed. Consequently, the plaintiff substituted for Ms. Wallace on just 43 of the 84 available days.

In March, 1986, a physician informed the district that Ms. Wallace could "resume her teaching activities with the fall semester of 1986." The district sent Ms. Wallace a contract for the 1986–87 school year, which she signed and returned. Unfortunately, her illness continued and she was unable to work at all during 1986–87. The plaintiff again was hired as Ms. Wallace's substitute, serving in that capacity throughout the school year.

In January, 1987, the physician informed the district that Ms. Wallace's "prognosis [was] good for recovery" and that "she might return to teaching the fall semester of 1987." The district sent Ms. Wallace a contract for the 1987–88 school year, but—apparently concluding that her health would not enable her to work—Ms. Wallace returned the contract unsigned. The district then declared her position "open" and hired the plaintiff to fill it.

In the meantime, however, the plaintiff filed the instant suit against the district. She alleged that she had not been timely hired as a substitute teacher in 1985–86 and that she should have been hired as a regular teacher, rather than as a substitute, in 1986–87. She sought a mandatory injunction compelling the district to hire her as a regular teacher, and she requested damages for loss of pay and benefits. Although the injunction question became moot when the district hired her as a regular teacher for the 1987–88 school year, the damage claims remained. Upon the district's motion, the trial court entered summary judgment against each claim, holding that the district had not violated the plaintiff's rights under the collective bargaining agreement. This appeal followed.

I

Before examining the merits of each claim, we pause to consider a threshold issue interposed by the district. The collective bargaining agreement does not specify the procedures by which an individual in the employment pool must be notified of an opportunity to work as a substitute teacher. Neither does the agreement prescribe any standards by which the district must determine whether a regular teaching position has become "open." Accordingly, the district urges in its brief that these are matters of administrative discretion. At oral argument, the district stated its position in more extreme terms—asserting that the constitutional powers of school districts somehow immunize them from judicial review of their compliance with employment contracts.

The immunity argument is easily answered. Contract disputes are justicia-

ble regardless of whether the parties are public or private. In *Grant Construction Co. v. Burns*, 92 Idaho 408, 412–13, 443 P.2d 1005, 1009–1010 (1968), our Supreme Court stated:

> [W]here the legislature has ... authorized the state to enter into certain contracts, the state upon entering into such a contract thereby consents to be sued if it breaches.... To deny the right to sue ... would be to deprive the damaged ... party of property without due process of law....

By parity of reasoning, the courts are empowered to decide whether a school district has breached a contract with one of its employees, and to provide a remedy where appropriate.

■ However, we accept the district's less extreme argument—that discretion exists where a contract fails to establish standards governing certain personnel actions, and such actions are not otherwise regulated by law. Nevertheless, administrative discretion is not a talisman from which all judicial authority retreats. Discretion narrows, but does not eliminate, judicial review. As noted later in this opinion, the exercise of administrative discretion remains subject to review for arbitrariness or lack of good faith.

## II

■ We now turn to the plaintiff's claim that the district violated the collective bargaining agreement by failing to hire her promptly as a substitute teacher during the 1985–86 school year. Particularly, she has alleged that the district did not make reasonable efforts to notify her immediately of the opportunity to substitute for Ms. Wallace. The district does not deny that it impliedly had such a duty under the agreement. Rather, the district takes the position that its duty was discharged by an unsuccessful attempt to notify the plaintiff.

The sole factual basis for this position is contained in an affidavit of the district superintendent, averring as follows:

> The principal at Tammany Elementary School had the responsibility to hire substitute teachers when the regular teacher was absent. At the time Georgia Wallace became ill, the principal ... attempted to contact plaintiff to employ her as a substitute. Your affiant *does not have specific knowledge* as to the circumstances surrounding why the principal was unable to contact plaintiff. [Emphasis added.]

On its face, this language reveals that the superintendent did not have personal knowledge of the efforts assertedly made by the school principal to contact the plaintiff. An affidavit asserting narrative facts must be based upon personal knowledge. I.R.C.P. 56(e); *Tapper Chevrolet Company v. Hansen*, 95 Idaho 436, 510 P.2d 1091 (1973). Accordingly, the plaintiff has argued that the superintendent's affidavit is incompetent. The district responds that the competency of the affidavit has not been preserved by the plaintiff as an issue on appeal. The district notes that the plaintiff filed no motion to strike, but merely submitted a memorandum in opposition to summary judgment, calling attention to various deficiencies in the superintendent's affidavit.

We need not decide today what degree of formality is required in order to challenge an affidavit under Rule 56(e). *See generally Noblett v. General Electric Credit Corp.*, 400 F.2d 442, 445 (10th Cir.), *cert. denied*, 393 U.S. 935, 89 S.Ct. 295, 21 L.Ed.2d 271 (1968) (defect in affidavit must be brought to court's attention by motion to strike or other suitable form of objection). In our view, even if the superintendent's affidavit were deemed competent under Rule 56(e), its content would fall short of the district's apparent purpose for submitting it. The affidavit does not describe the effort allegedly made by the school principal to notify the plaintiff of the opportunity to substitute for Ms. Wallace. Neither does it specify when this asserted effort was undertaken. Consequently, the affidavit provides no factual basis to determine that the district complied with its notification duty. We conclude that a genuine issue of material fact exists. Accordingly, we vacate the summary judgment

insofar as it relates to the teacher's damage claim for loss of substitute teaching days during the 1985–86 school year.[1]

### III

██ Finally, we turn to the plaintiff's contention that the district further breached the collective bargaining agreement by failing to hire her as a regular teacher during the 1986–87 school year. This issue is well developed in the affidavits submitted by both parties. It is undisputed that plaintiff received a lesser salary and fewer employment benefits as a substitute teacher than she would have received as a regular teacher. It is equally undisputed that the plaintiff would have been entitled to the regular teaching job held by Ms. Wallace if that position had been "open" during the 1986–87 school year. The plaintiff contends that the district wrongfully refused to declare the position "open" despite Ms. Wallace's inability to work.

As noted earlier, the collective bargaining agreement establishes the right of an individual in the employment pool to fill an "open" teaching position; but it does not prescribe standards for determining whether such an opening has occurred. This determination is left in the discretion of the school district. Setting aside the immunity argument, rejected earlier in today's opinion, it appears that the district concedes its discretion is not unfettered. The district may not frustrate the collective bargaining agreement by acting arbitrarily or in bad faith. Similarly, the plaintiff contends that the district has an implied duty to act rea-

sonably. We believe the plaintiff's formulation of the district's duty is functionally equivalent to the district's own concession that it may not act arbitrarily or in bad faith.

The existence of arbitrariness or bad faith is a question of fact to be determined upon the particular circumstances presented in each case. Here, in its order granting the district's motion for summary judgment, the trial court found no arbitrary action or bad faith. To the contrary, the court held that the district had acted within the reasonable bounds of its discretion by giving Ms. Wallace a contract for the 1986–87 year and allowing the contract to remain in force during that year. The court noted that Ms. Wallace, a tenured teacher, had employment rights which the school district could not disregard, particularly in light of the physician's opinion that Ms. Wallace could return to teaching during 1986–87. Moreover, the record discloses that the district sought and obtained an informal opinion of the Idaho Attorney General, advising that the district was not legally compelled to terminate a tenured teacher's contract solely because of an extended illness.

In essence, the trial court concluded that although the record, and reasonable inferences from the evidence, would be viewed in best light to the plaintiff,[2] there was no prima facie showing that the district acted arbitrarily or in bad faith in refusing to declare Ms. Wallace's position "open." We agree. Accordingly, we uphold the court's entry of summary judgment against the plaintiff's claim of right to employment as

---

1. Because we hold that a genuine issue exists regarding timely notification, we do not reach a subsidiary question as to whether the district, after eventually notifying the plaintiff, wrongfully delayed the commencement of her substitute teaching until "spring break," in order to provide a smooth transition for the students. That question may be addressed, if necessary, by the trial court on remand.

2. Neither party requested a jury trial. Consequently, the trial court could have exercised its power under *Riverside Development Co. v. Ritchie,* 103 Idaho 515, 650 P.2d 657 (1982), to draw what it considered the most probable in-

ferences from the uncontroverted facts. Had the court done so, our standard of review on appeal would have been equivalent to the standard of clear error prescribed by I.R.C.P. 52(a). *Argyle v. Slemaker,* 107 Idaho 668, 691 P.2d 1283 (Ct.App.1984). However, the trial court's failure to employ the *Ritchie* approach has not affected the result in this case. Because we agree with the trial court that no genuine issue of material fact was established with respect to any arbitrary action or bad faith, it follows that the court's findings would also pass muster under a deferential "clear error" standard of appellate review.

a regular teacher during the 1986–87 school year.

Because the summary judgment is vacated in part, with respect to plaintiff's service as a substitute teacher during the 1985–86 school year, this case is remanded for proceedings consistent with our opinion. The summary judgment otherwise is affirmed.

In light of the mixed result, we award no costs or attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.